Clerk's Office
File Date:
12/14/2021
U.S. DISTRICT
COURT-EDNY
BROOKLYN
OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:
BOYSIN RALPH LORICK, CYNTHIA
THERESA LORICK,
               Debtors.
-----------------------------------------------------------x
SOLEYMAN GHALCHI,

               Appellant,

- against -

BOYSIN RALPH LORICK and CYNTHIA
THERESA LORICK,

               Appellees.
-----------------------------------------------------------x

MEMORANDUM AND ORDER
17-cv-5641 (ILG),
17-cv-6344 (ILG)
(Consolidated)

**GLASSER**, Senior United States District Judge:

    Appellant Soleyman Ghalchi appeals two orders from the United States Bankruptcy Court for the Eastern District of New York; each appeal was docketed in this Court separately, the first under case number 17-cv-5641, and the second under case number 17-cv-6344. The Court directed that the two cases be consolidated and now resolves both together. For the reasons explained below, the Court **AFFIRMS** both orders of the Bankruptcy Court.

## BACKGROUND

    This case centers around the sale of a multi-unit apartment building located at 3126 Coney Island Avenue, Brooklyn, New York ("Property"). The Property was subject to a first mortgage held by Wells Fargo Bank. When the owners of the Property – Appellees Boysin Ralph Lorick and Cynthia Theresa Lorick – defaulted on the mortgage, Wells Fargo secured a foreclosure judgment from the New York Supreme Court, Kings County, in 2016. *See Wells Fargo Bank, N.A. v. Lorick*, No. 500469/2013 (Kings Cnty., N.Y. 2016). In December 2016, the Loricks filed

1

a voluntary petition for bankruptcy under Chapter 11. *See In re Boysin Ralph Lorick & Cynthia Theresa Lorick*, No. 16-45645-nhl (Bankr. E.D.N.Y. 2016). They made it clear throughout the bankruptcy proceeding that they wanted to keep the title to the Property. The bankruptcy court permitted Appellees the opportunity to attempt to secure financing as long as they contemporaneously made arrangements to sell the Property. Ultimately, Appellees were unable to secure financing and the Property was sold at a public auction in accordance with a process approved by the bankruptcy court.

The auction was scheduled to take place on August 22, 2017. Prior to the day of the auction, three bidders pre-qualified to participate – one of the three was Appellant Ghalchi. The morning of the auction, a fourth individual named Mohammad Choudhary sought to be qualified to participate in the auction. According to the transcript of the auction, Appellant's counsel asked whether Mr. Choudhary had "any relationship to the debtor at all." [ECF No. 9-5, at p. 13 (Aug. 22, 2017 Auction Tr. at 9:17-20)].[1] Appellees' counsel, who was conducting the auction, consulted with Appellee Boysin Lorick and then replied: "I just asked Boysin Lorick if he had a familial interest with Mohammad Choudhary, he said no. I asked him if he had – if he shared an interest in real estate, shared an interest in a partnership or LLC or any other business venture with him and he said no." *Id.* at p. 14 (Aug. 22, 2017 Auction Tr. at 10:9-16).

Despite an objection from Wells Fargo and Appellant, Mr. Choudhary was permitted to participate in the auction. Mr. Choudhary ultimately offered the highest bid, at $7,400,000, with Appellant offering the second highest at $7,350,000. The third highest bid was $6,950,000. Because of Wells Fargo's objection to Choudhary, Appellees submitted Appellant's name to the bankruptcy court as the successful bidder at $7,350,000. The bankruptcy court approved the sale

---

[1] Docket citations are to the docket in Case No. 17-cv-5641.

2

to Appellant for $7,350,000, issuing an Order Approving the Sale of Real Property "as is" and "where is," Free and Clear of all Liens, Claims, Encumbrances and Interest and Granting Related Relief on September 8, 2017.

On September 11, 2017, Appellant moved to set aside the bankruptcy court's order pursuant to Bankruptcy Rule 9024 and Fed. R. Civ. P. 60(b). He argued that because Mr. Choudhary's participation in the auction was improper, the auction price was also improper, and he should only have to pay $7,000,000 – the amount that would have been the winning bid but for Mr. Choudhary's participation. Appellant contended that there was an undisclosed relationship between Appellees and Mr. Choudhary, and an agreement between them that Mr. Choudhary would be allowed to participate, inflate the auction price, and delay the sale process (giving Appellees more time to find financing), but not be required to close. Prior to the resolution of this motion, on September 20, 2017, Appellant filed a notice of appeal to this Court of the bankruptcy court's September 8, 2017, order approving the sale of the Property. The bankruptcy court construed Appellant's September 11th motion as a motion under Bankruptcy Rule 9023 and Fed. R. Civ. P. 59; it held a two-day evidentiary hearing on the motion, and then denied it on October 12, 2017. Appellant appealed that decision to this Court on October 26, 2017.

Appellant asks this Court to modify the bankruptcy court's prior orders, revise the purchase price of the Property to $7,000,000, and direct a refund of $350,000 to him. Am. Appellant Br. [ECF No. 20], at 20.

## ANALYSIS

I. **Standard of Review**

28 U.S.C. § 158(a) provides this Court with jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. It "may affirm, modify, or reverse a

bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 581 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 830 F. App'x 669 (2d Cir. 2020) (quoting *W. Milford Shopping Plaza v. The Great Atl. & Pac. Tea Co. (In re Great Ail. & Pac. Tea Co.)*, No. 14-cv-4170 (NSR), 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015)). In doing so, the Court reviews the bankruptcy court's findings of fact for clear error and legal conclusions *de novo*. *In re Belmonte*, 931 F.3d 147, 152 (2d Cir. 2019) (citing *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007)). "A factual finding is not clearly erroneous unless 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re CBI Holding Co., Inc.*, 529 F.3d 432, 449 (2d Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

"The approval of a sale of assets under section 363 of the Bankruptcy Code is generally reviewed for abuse of discretion." *Lynch v. Vaccaro*, 566 B.R. 290, 299 (E.D.N.Y. 2017), *aff'd sub nom. Frank v. Lynch*, 728 F. App'x 71 (2d Cir. 2018) (quoting *23 Jefferson St. LLC v. 636 Assets, Inc.*, No. 14-cv-7150 (CBA), 2015 WL 5037343, at *3 (E.D.N.Y. Aug. 25, 2015)). A denial of a motion for reconsideration, which is how the bankruptcy court treated Appellant's September 11, 2017 motion to set aside the order approving the Property's sale, is similarly reviewed for an abuse of discretion. *Cyrus v. City of New York*, 450 F. App'x 24, 26 (2d Cir. 2011); *In re Silicon Graphics, Inc.*, 356 F. App'x 536, 537 (2d Cir. 2009). A bankruptcy court abuses its discretion when it renders "(i) a decision 'rest[ing] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,' or (ii) a decision that, 'though not necessarily the product of a legal error or a clearly erroneous factual finding[,] cannot be located within the range of permissible decisions.'" *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671,

678 (2d Cir. 2003) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)); *see also In re Pinnock*, 833 F. App'x 498, 501 (2d Cir. 2020) ("a bankruptcy court would *necessarily* abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence") (quoting *Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 186 (2d Cir. 2012)).

These standards are applied "with a view toward the longstanding public policy in favor of upholding the finality of sale orders issued by Bankruptcy Courts, which is currently embodied in Bankruptcy Code § 363(m)." *In re Joe's Friendly Serv. & Son, Inc.*, 538 B.R. 618, 625 (E.D.N.Y. 2015) (collecting cases).

II. **Application**

Appellant's argument rests on the belief that Appellees colluded with Mr. Choudhary. Appellant contends that the evidence presented at the two-day hearing on the motion to reconsider showed that Mr. Choudhary had an undisclosed relationship with Appellee Boysin Lorick, and that Lorick's failure to reveal that relationship when asked was part of an agreement the two had made to inflate the auction price and delay the closing. The point of this agreement was to give Appellees more time to secure financing or at least to reap a higher sale price. [ECF 9-2, at p. 131 (Motion of Soleyman Ghalchi, at ¶ 5)]; Am. Appellant Br. [ECF No. 20], at 17-18. Appellant asserts that the bankruptcy court's conclusion that no such collusion existed is the result of three erroneous factual findings. First, he says the bankruptcy court abused its discretion by finding that Appellee "Boysin Lorick's statement that he did not have a business relationship was merely 'incomplete.'" Am. Appellant Br. [ECF No. 20], at 13. The exchange regarding Appellees' relationship with Mr. Choudhary that occurred the morning of the auction is set out above.

Second, Appellant faults the bankruptcy court for finding "that Choudhary exhibited [the] financial wherewithal to close on his purchase of the Property." *Id.* According to Appellant, the documents presented to the bankruptcy court regarding Mr. Choudhary's ability to close on the transaction were "either stale, expired, or not commitments [for funding] at all" and thus "are not a reliable indicator of any ability to close a transaction in excess of the cash Choudhary had available." *Id.* at 15. Given the assumption that Mr. Choudhary could not close the transaction, Appellant concludes that Mr. Choudhary's bidding in the auction must not have been in good faith.

Third, Appellant says it was incorrect to conclude that "Choudhary's $700,000 deposit for the Auction was at risk and evidenced a lack of actual collusion between Choudhary and Boysin Lorick." *Id.* at 13. Rather, Appellant says that the approved terms of sale provided for deposits to become non-refundable only after the bankruptcy court approved the first and second place bidders. *Id.* at 18.

Appellant's argument is premised entirely on circumstantial evidence that does not necessarily give rise to the conclusion he asks the Court to draw. When given the opportunity at the hearing on his motion to reconsider, Appellant was not able to point to any evidence at all to support his theory of collusion; rather, he explained that his theory is based on the fact that Mr. Choudhary knew Appellees, that Mr. Choudhary had involvement with the bankruptcy proceeding, and that he was qualified for the auction at the last minute. *See* [ECF No. 9-5, at pp. 495-96 (Oct. 6, 2017 Hr'g Tr. at 166:10-167:18)].

That Appellee Boysin Lorick qualified Mr. Choudhary to participate in the auction at the last minute and then failed to disclose the nature of their relationship does not necessarily mean that they colluded. Rather, the bankruptcy court could reasonably credit Mr. Choudhary's testimony that he only sought to participate in the auction the night before, when he learned that

the auction was actually going to go forwards (owing to the bankruptcy court's denial of a last-minute motion by Appellees to postpone the auction). *See id.* at pp. 369-72 (Oct. 6, 2017 Hr'g Tr. at 40:1-43:17). The court-approved auction procedures placed the responsibility for approving bidders with Appellees, so Mr. Lorick was simply doing his job when he qualified an interested bidder. To that end, the fact that Mr. Lorick knew Mr. Choudhary – and Mr. Choudhary's financial abilities – actually helps to justify Mr. Lorick's decision to qualify Mr. Choudhary the morning of the auction, rather than to suggest improper behavior. It also undermines what Appellant claims is the second erroneous factual finding made by the bankruptcy court regarding Mr. Choudhary's financial abilities.

Even if the Court were to disregard the lack of evidence, though, Appellant's argument would still have to be rejected because the approved sale procedures required that Mr. Choudhary's offer – and thus his deposit – be irrevocable before the start of the auction. *See* ECF No. 9-1 at p. 89 (Bidding Procedures at III.B.(b)); [ECF No. 9-5 at p. 9 (Aug. 22, 2017 Auction Tr. at 5:13-18)]. This is also why Appellant's third purported factual error is actually not an error at all. The only reason that Mr. Choudhary's high bid was not selected as the winner – and thus he was able to recover his deposit – was because of an objection from Wells Fargo, not because of Appellees. [ECF No. 9-5, at p. 53 (Aug. 24, 2017 Hr'g Tr. at 11:7-13)]. But for Wells Fargo's objection, Mr. Choudhary's high bid would have been submitted to the court for approval and he would have been required to close or else to lose his deposit. The bankruptcy court recognized this fact and reasonably concluded that there was no basis to believe that Mr. Choudhary was something other than a serious bidder, was only bidding as part of a stalling tactic, or that his deposit was not truly at risk. *Id.* at pp. 536-37 (Oct. 6, 2017 Hr'g Tr. at 207:17-208:12). Indeed, the record shows that after the auction Mr. Choudhary placed $735,000 into escrow in an attempt to secure his purchase

of the Property, and that he knew that deposit would be non-refundable. *Id.* at p. 382 (Oct. 6, 2017 Hr'g Tr. at 53:23-24), p. 497 (Oct. 6, 2017 Hr'g Tr. at 168:8-13). Appellant presented no reason for the bankruptcy court to believe that Mr. Choudhary was willing to throw away $735,000 other then that it was all part of a "game" Appellees and Mr. Choudhary were playing. *Id.* at 496-97 (Oct. 6, 2017 Hr'g Tr. at 167:22-168:7)]. It is not an abuse of discretion to reject a movant's rank speculation.

This leaves only Appellant's first allegedly erroneous factual finding, that the bankruptcy court was wrong to find that the statement made prior to the auction regarding the relationship between Appellees and Mr. Choudhary was only "incomplete." Am. Appellant Br. [ECF No. 20], at 13. But that is not what the bankruptcy court held. Rather, the bankruptcy court used the term "incomplete" to characterize what it understood Appellant's argument to be:

> I don't think that it's being alleged that this was a false statement, but only that it was incomplete, but that it was incomplete because it failed to disclose that Mr. Choudhary had been a friend, had done favors for Mr. Lorick in the past, had advanced funds on his behalf for which he expected at some point to be paid.

[ECF No. 9-5, at pp. 539-40 (Oct. 6, 2017 Hr'g Tr. at 210:21-211:1)]. The bankruptcy court's actual holding was that Appellant failed to present sufficient evidence to establish that he reasonably relied on the statement at the auction, or that he would not have participated in the auction if he had known about the relationship between Mr. Choudhary and Appellees. *Id.* at p. 540 (Oct. 6, 2017 Hr'g Tr. at 211:2-10). It was reasonable for the bankruptcy court to conclude that Appellant would have participated even if he did know about the relationship because Appellant admitted at the hearing that he still had concerns about Mr. Choudhary's participation but did not ask any further questions, and that he freely chose to participate in the auction anyway. *Id.* at pp. 476-77 (Oct. 6, 2017 Hr'g Tr. at 147:19-148:2). Equally as significant, though, the bankruptcy court also reasonably concluded that the new evidence presented at the hearing did not

8

establish an intention to defraud (or collusion), and thus did not serve as grounds to grant reconsideration of its prior order.

In short, Appellant has not presented any well-found, factually supported reason to either support his own theory or for this Court to find that the bankruptcy court abused its discretion.

Appellees, for their part, continue their attempt to avoid the Property's sale on appeal before this Court. In their brief, they now allege that Appellant and another bidder had a secret agreement to keep their bids at the auction low, in violation of the Sherman Antitrust Act. They therefore assert that the sale should be cancelled, and they offer to refund the entire purchase price amount to Appellant. Although creative, the Court recognizes Appellees' argument – which was not presented below – for the stalling tactic that it is and will not consider it on this appeal.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the orders of the bankruptcy court.

SO ORDERED.

Dated:     Brooklyn, New York
           December 14, 2021

                                                    /s/_____
                                                    I. Leo Glasser
                                                    Senior United States District Judge